JS 44   (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| Jacqueline M. Maher, on behalf of herself and those similarly | United Collection Bureau Inc.; and John Does 1 to 10 |

| (b)  County of Residence of First Listed Plaintiff    Hudson | County of Residence of First Listed Defendant   Lucas County, OH |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED. |

| (c)  Attorneys *(Firm Name, Address, and Telephone Number)*<br>Yongmoon Kim, Esq.- Kim Law Firm LLC<br>411 Hackensak Ave., Suite 701, Hackensak, NJ 07601<br>(201) 273-7117 | Attorneys *(If Known)*<br>Peter G. Siachos, Esq.- Gordon Rees Scully Mansukhani LLP<br>18 Columbia Turnpike, Suite 220, Florham Park, NJ 07932<br>(973) 549-2500 |
|---|---|

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government
      Plaintiff
- [x] 3   Federal Question
      *(U.S. Government Not a Party)*
- [ ] 2   U.S. Government
      Defendant
- [ ] 4   Diversity
      *(Indicate Citizenship of Parties in Item III)*

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place<br>of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place<br>of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a<br>Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance<br>[ ] 120 Marine<br>[ ] 130 Miller Act<br>[ ] 140 Negotiable Instrument<br>[ ] 150 Recovery of Overpayment<br>   & Enforcement of Judgment<br>[ ] 151 Medicare Act<br>[ ] 152 Recovery of Defaulted<br>   Student Loans<br>   (Excludes Veterans)<br>[ ] 153 Recovery of Overpayment<br>   of Veteran's Benefits<br>[ ] 160 Stockholders' Suits<br>[ ] 190 Other Contract<br>[ ] 195 Contract Product Liability<br>[ ] 196 Franchise | **PERSONAL INJURY**<br>[ ] 310 Airplane<br>[ ] 315 Airplane Product<br>   Liability<br>[ ] 320 Assault, Libel &<br>   Slander<br>[ ] 330 Federal Employers'<br>   Liability<br>[ ] 340 Marine<br>[ ] 345 Marine Product<br>   Liability<br>[ ] 350 Motor Vehicle<br>[ ] 355 Motor Vehicle<br>   Product Liability<br>[ ] 360 Other Personal<br>   Injury<br>[ ] 362 Personal Injury -<br>   Medical Malpractice | [ ] 625 Drug Related Seizure<br>   of Property 21 USC 881<br>[ ] 690 Other | [ ] 422 Appeal 28 USC 158<br>[ ] 423 Withdrawal<br>   28 USC 157<br>**INTELLECTUAL<br>PROPERTY RIGHTS**<br>[ ] 820 Copyrights<br>[ ] 830 Patent<br>[ ] 835 Patent - Abbreviated<br>   New Drug Application<br>[ ] 840 Trademark<br>[ ] 880 Defend Trade Secrets<br>   Act of 2016 | [ ] 375 False Claims Act<br>[ ] 376 Qui Tam (31 USC<br>   3729(a))<br>[ ] 400 State Reapportionment<br>[ ] 410 Antitrust<br>[ ] 430 Banks and Banking<br>[ ] 450 Commerce<br>[ ] 460 Deportation<br>[ ] 470 Racketeer Influenced and<br>   Corrupt Organizations<br>[x] 480 Consumer Credit<br>   (15 USC 1681 or 1692)<br>[ ] 485 Telephone Consumer<br>   Protection Act<br>[ ] 490 Cable/Sat TV |
| | **PERSONAL INJURY**<br>[ ] 365 Personal Injury -<br>   Product Liability<br>[ ] 367 Health Care/<br>   Pharmaceutical<br>   Personal Injury<br>   Product Liability<br>[ ] 368 Asbestos Personal<br>   Injury Product<br>   Liability<br>**PERSONAL PROPERTY**<br>[ ] 370 Other Fraud<br>[ ] 371 Truth in Lending<br>[ ] 380 Other Personal<br>   Property Damage<br>[ ] 385 Property Damage<br>   Product Liability | **LABOR**<br>[ ] 710 Fair Labor Standards<br>   Act<br>[ ] 720 Labor/Management<br>   Relations<br>[ ] 740 Railway Labor Act<br>[ ] 751 Family and Medical<br>   Leave Act<br>[ ] 790 Other Labor Litigation<br>[ ] 791 Employee Retirement<br>   Income Security Act | **SOCIAL SECURITY**<br>[ ] 861 HIA (1395ff)<br>[ ] 862 Black Lung (923)<br>[ ] 863 DIWC/DIWW (405(g))<br>[ ] 864 SSID Title XVI<br>[ ] 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>[ ] 870 Taxes (U.S. Plaintiff<br>   or Defendant)<br>[ ] 871 IRS—Third Party<br>   26 USC 7609 | [ ] 850 Securities/Commodities/<br>   Exchange<br>[ ] 890 Other Statutory Actions<br>[ ] 891 Agricultural Acts<br>[ ] 893 Environmental Matters<br>[ ] 895 Freedom of Information<br>   Act<br>[ ] 896 Arbitration<br>[ ] 899 Administrative Procedure<br>   Act/Review or Appeal of<br>   Agency Decision<br>[ ] 950 Constitutionality of<br>   State Statutes |
| **REAL PROPERTY**<br>[ ] 210 Land Condemnation<br>[ ] 220 Foreclosure<br>[ ] 230 Rent Lease & Ejectment<br>[ ] 240 Torts to Land<br>[ ] 245 Tort Product Liability<br>[ ] 290 All Other Real Property | **CIVIL RIGHTS**<br>[ ] 440 Other Civil Rights<br>[ ] 441 Voting<br>[ ] 442 Employment<br>[ ] 443 Housing/<br>   Accommodations<br>[ ] 445 Amer. w/Disabilities -<br>   Employment<br>[ ] 446 Amer. w/Disabilities -<br>   Other<br>[ ] 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>[ ] 463 Alien Detainee<br>[ ] 510 Motions to Vacate<br>   Sentence<br>[ ] 530 General<br>[ ] 535 Death Penalty<br>**Other:**<br>[ ] 540 Mandamus & Other<br>[ ] 550 Civil Rights<br>[ ] 555 Prison Condition<br>[ ] 560 Civil Detainee -<br>   Conditions of<br>   Confinement | **IMMIGRATION**<br>[ ] 462 Naturalization Application<br>[ ] 465 Other Immigration<br>   Actions | |

## V.  ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1   Original
      Proceeding
- [x] 2   Removed from
      State Court
- [ ] 3   Remanded from
      Appellate Court
- [ ] 4   Reinstated or
      Reopened
- [ ] 5   Transferred from
      Another District
      *(specify)*
- [ ] 6   Multidistrict
      Litigation -
      Transfer
- [ ] 8   Multidistrict
      Litigation -
      Direct File

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. 1692
Brief description of cause:
Plaintiff alleges that Defendant violated the FDCPA, NJCFA, committed negligence and invasion of privacy

## VII.  REQUESTED IN COMPLAINT:

[x] CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   [x] Yes   [ ] No

## VIII.  RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE

SIGNATURE OF ATTORNEY OF RECORD
/s/ Peter G. Siachos

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: <u>Nature of Suit Code Descriptions</u>.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACQUELINE M. MAHER, *on behalf of herself and those similarly situated,*<br><br>                  Plaintiff,<br><br>vs.<br><br>UNITED COLLECTION BUREAU, INC.; and JOHN DOES 1 to 10,<br><br>                  Defendants. | Civil Action No.:<br><br><br>**<u>NOTICE OF REMOVAL</u>** |

Pursuant to 28 U.S.C. §§ 1441 and 1446, Defendant United Collection Bureau, Inc. ("UCB"), by and through their attorneys, Gordon Rees Scully Mansukhani LLP, jointly and collectively file this Notice of Removal for the above-captioned case, removing this case from the Superior Court of New Jersey, Hudson County, Law Division, Docket No.: HUD-L-1993-22 to the United States District Court for the District of New Jersey.  UCB respectfully represents and state as follows:

1.      On June 17, 2022, Plaintiff Jacqueline M. Maher commenced this action by filing a Complaint in the Superior Court of New Jersey, Hudson County, Law Division, HUD-L-1993-22, captioned *Jacqueline M. Maher, on behalf of himself and those similarly situated v. United Collection Bureau, Inc., et al.*  A copy of the Complaint is annexed hereto as **<u>Exhibit A</u>**.

2.      In accordance with 28 U.S.C. § 1446(a) the Complaint constitutes all of the process, pleadings, and orders served on UCB prior to the removal of this action.

## <u>STANDARD FOR REMOVAL</u>

3.      UCB files this Notice of Removal pursuant to 28 U.S.C. § 1441(a), which provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed," and pursuant to 28 U.S.C. § 1446(b), which provides that

notice of removal "shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading."

4.    UCB was served with the Complaint on June 30, 2022. Therefore, UCB is filing this Notice of Removal within thirty (30) days of the receipt of the Complaint.

## FEDERAL QUESTION JURISDICTION

5.    Under 28 U.S.C. § 1331, this Court has original jurisdiction over all claims arising under the laws of the United States.

6.    Here, UCB's alleged violation of the FDCPA constitutes a claim being brought under the laws of the United States.

7.    Moreover, under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over any potential claims brought pursuant to any state, county, or local law that form part of the same controversy.

8.    Here, jurisdiction is conferred on this Court, pursuant to 28 U.S.C. § 1367, concerning any claim that Plaintiff may assert in his complaint, which arises under the same facts and that form part of the same controversy.

9.    Accordingly, this action presents claims arising under the laws of the United States thereby conferring jurisdiction on this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

10.    Furthermore, the Complaint contains sufficient allegations to confer Article III Standing.

11.    8.    Indeed, Plaintiff alleges, *inter alia*, that she "suffered an ascertainable loss;" "suffered a compensable loss;" and was damaged by UCB's purported exposure of her private information. *See* Exhibit A at ¶¶ 82, 89, 98, and 99.

12.

13.    Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) because the United States District Court for the District of New Jersey, Newark Division is the district and division within which this lawsuit is pending (Hudson County, New Jersey).

14.    Contemporaneous with the filing of this Notice of Removal, UCB has given written notice to Plaintiff and has filed a copy of this Notice of Removal with the Clerk of the Superior Court of New Jersey, Hudson County, Law Division, as well as a Notice of Filing the Petition for Removal.

15.    By filing this Notice of Removal, UCB does not waive any rights or defenses, and expressly reserve all rights and defenses that they may have with respect to Plaintiff's Action.

## **PRAYER FOR RELIEF**

WHEREFORE, UCB hereby gives notice that this action is removed to the United States District Court for the District of New Jersey.

Dated: July 21, 2022

GORDON REES SCULLY MANSUKHANI LLP
*Attorneys for Defendant United Collection Bureau, Inc.*


By:    */s/ Peter G. Siachos*
_____
Peter G. Siachos
D. Wesley Meehan

18 Columbia Turnpike, Suite 220
Florham Park, NJ 07932
Tel: (973) 549-2500
Fax: (973) 377-1911
Email: psiachos@grsm.com
          wmeehan@grsm.com


To:    *Attorneys for Plaintiff*
Yongmoon Kim

3

Kim Law Firm LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
ykim@kimlf.com

Ronald I. LeVine
Eileen L. Linarducci
Law Office of Ronald I. LeVine, Esq.
210 River Street, Suite 11
Hackensack, NJ 07601

# EXHIBIT A

```
HUDSON COUNTY SUPERIOR COURT
HUDSON COUNTY
583 NEWARK AVENUE
JERSEY CITY      NJ 07306
                                TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (201) 748-4400
COURT HOURS  8:30 AM - 4:30 PM


                    DATE:   JUNE 17, 2022
                    RE:     MAHER JACQUELIN  VS UNITED COLLECTION BU REAU, IN
                    DOCKET: HUD L -001993 22


     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 4.


     DISCOVERY IS PRESUMPTIVELY 450 DAYS BUT MAY BE ENLARGED OR SHORTENED BY THE
JUDGE AND RUNS FROM THE FIRST ANSWER OR 90 DAYS FROM SERVICE ON THE FIRST
DEFENDANT, WHICHEVER COMES FIRST.
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.


     THE MANAGING JUDGE ASSIGNED IS:  HON VERONICA ALLENDE


     IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      002
AT:  (201) 748-4400.


     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                    ATTENTION:
                         ATT: YONGMOON KIM
                         KIM LAW FIRM LLC
                         411 HACKENSACK AVE STE 701
                         HACKENSACK       NJ 07601


ECOURTS
```

# Civil Case Information Statement

## Case Details: HUDSON | Civil Part Docket# L-001993-22

**Case Caption:** MAHER JACQUELIN  VS UNITED
COLLECTION BU REAU, IN

**Case Initiation Date:** 06/17/2022

**Attorney Name:** YONGMOON KIM

**Firm Name:** KIM LAW FIRM LLC

**Address:** 411 HACKENSACK AVE STE 701
HACKENSACK NJ 07601

**Phone:** 2012737117

**Name of Party:** PLAINTIFF : Maher, Jacquelin, M

**Name of Defendant's Primary Insurance Company**
(if known): Unknown

**Case Type:** COMPLEX COMMERCIAL

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same
transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: Jacquelin M Maher?** NO

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual
management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** YES  **Title 59?** NO  **Consumer Fraud?** YES

I certify that confidential personal identifiers have been redacted from documents now submitted to the
court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

06/17/2022
Dated

/s/ YONGMOON KIM
Signed

Yongmoon Kim (NJ Atty. ID #026122011)
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
Telephone & Fax (201) 273-7117
ykim@kimlf.com

Ronald I. LeVine (NJ Atty. ID #278801972)
ron@ronlevinelaw.com
Eileen L. Linarducci (NJ Atty. ID #030891983)
elinarducci@ronlevinelaw.com
LAW OFFICE OF RONALD I. LEVINE, ESQ.
210 River Street, Suite 11
Hackensack, New Jersey 07601
Tel. (201) 489-7900
Fax (201) 489-1395

*Attorneys for Plaintiff Jacqueline M. Maher*

|  |  |
|---|---|
| JACQUELINE M. MAHER, *on behalf of herself and those similarly situated,*<br><br>Plaintiff,<br><br>vs.<br><br>UNITED COLLECTION BUREAU, INC.; and JOHN DOES 1 to 10,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: HUDSON COUNTY<br><br>Civil Action<br><br>Docket No.<br><br>**CLASS ACTION COMPLAINT<br>and JURY DEMAND** |

Plaintiff Jacqueline M. Maher, individually and on behalf of those similarly situated, by way of Class Action Complaint against Defendant United Collection Bureau, Inc., and John Does 1 to 10, state:

### NATURE OF THE CASE

1.     This is a putative class action arising from Defendant, United Collection Bureau, Inc.'s unlawful disclosure of private financial information to third parties without the prior consent of the consumers.

2.      The Fair Debt Collection Practices Act prohibits the disclosure of information to

third parties to prevent identity theft and invasions of privacy. As the National Consumer Law

Center put it eloquently:

> As the world has gone digital, consumers' records, both financial and otherwise, are increasingly vulnerable to exposure. Transactions that were once fleeting, recorded only on paper and filed in some cabinet, or perhaps reduced to microfiche, are now but mouse-clicks away from duplication and dissemination.

> Unregulated databases, escalating numbers of mergers, and the proliferation of information brokers—private investigators who specialize in obtaining computerized records—all threaten privacy. As was noted in Congress, "databases of personal identifiable information are increasingly prime targets of hackers, identity thieves, rogue employees, and other criminals, including organized and sophisticated criminal operations."

> The internet raises particular privacy concerns, as information sent over the World Wide Web may pass through dozens of different computer systems, each of which can snatch and hold the information in its coffers. In addition, website owners can track consumers' online behavior and gather information about their preferences, often without their knowledge. Web bugs, or tiny graphics that are put into web pages and e-mails, can monitor who views the information. Clickstream data can tell website owners which pages of the site were viewed and for how long. "Cookies" dropped onto a computer may not identify the user by name but do identify the particular computer, which allows an interested party to assemble a great deal of information about that computer's user.

> Financial information is especially sensitive, able to reveal not just a consumer's standard of living and debt load, but also personal preferences and lifestyle details ranging from books bought to prescriptions purchased. In *California Bankers Ass'n v. Shultz*, Justice Powell pointed out that "[f]inancial transactions can reveal much about a person's activities, associations, and beliefs." Justice Douglas elaborated further:

> A checking account . . . [m]ay well record a citizen's activities, opinion, and beliefs as fully as transcripts of his telephone conversations . . . In a sense a person is defined by the checks he writes. By examining them the agents get to know his doctors, lawyers, creditors, political allies, social connections, religious affiliation, educational interests, the papers and magazines he reads,

and so on ad infinitum.

The same can be said of credit card charges, debit purchases, and online transactions. Forty years later, the details of these revealing consumer activities are easily collected, compiled, analyzed, and accessed, and thus have created a lucrative market for their trade. One industry leader among data aggregation companies, Acxiom, advertises that it has data on 2.5 billion consumers. Acxiom claims that one of its products covering American consumers has data on 250 million consumers, offering data not just on individual demographics, but also household characteristics, financial information, life events, major purchases, and behavior, all of which allows for targeted marketing. Experian reports that it manages data on more than 300 million consumers and 126 million households, while Equifax claims a database of over 115 million U.S. households distributed over 150 different segment groups, which can be used to predict behavior. In 2017, Equifax suffered a data breach that involved the personal data on nearly half the United States population being stolen, a breach that a Congressional committee found to have been "entirely preventable." In 2014, the Federal Trade Commission filed a complaint against another data broker that allegedly bought the payday loan applications of consumers and then sold the information to marketers with no legitimate need for it, leading some scammers among them to debit millions from the consumers' accounts.

National Consumer Law Center, Fair Credit Reporting (9th ed. 2017) § 18.1, *updated at*

www.nclc.org/library (footnotes omitted and alterations in original) (attached as ***Exhibit A***).

3.      For example, in enacting the FDCPA, Congress found "abundant evidence of the

use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive

debt collection practices contribute to the number of personal bankruptcies, to marital instability,

to the loss of jobs, and **to invasions of individual privacy**. 15 U.S.C. § 1692(a). *See also*

*Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303-04 (3d Cir. 2014) ("The disclosure of

[the consumer's] account number raises these privacy concerns. The account number is a core

piece of information pertaining to [the consumer's] status as a debtor and Convergent's debt

collection effort. Disclosed to the public, it could be used to expose her financial predicament.

Because Convergent's disclosure implicates core privacy concerns, it cannot be deemed

benign.").

4.    Despite the *Douglass* ruling, Defendant continues to misuse and unlawfully disclose private financial information about consumers to third-parties.

5.    Defendant's disclosure of sensitive financial information to third parties is an act consistent with a course of conduct and practice which was either designed to, or had as its natural consequence, an attempt to obtain money from consumers through the use of false, misleading, deceptive, abusive, unfair, unconscionable, and unlawful conduct prohibited by common law and statutory law including, but not limited to, the Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1, *et seq.*, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*

6.    Defendant is subject to strict liability under the FDCPA for the prohibited communication with third parties "without the prior consent of the consumer given directly to the debt collector . . . in connection with the collection of [the] debt, with any person other than the consumer . . . ." 15 U.S.C. § 1692c(b). *See also*, 15 U.S.C. § 1692d(3).

7.    Thus, Plaintiff brings this class action for damages against Defendant arising from Defendant's unlawful disclosure of sensitive and confidential personal identifying and financial information, when attempting to collect debts from New Jersey consumers.

8.    Defendant is subject to strict liability under the FDCPA for communicating with third parties "without the prior consent of the consumer given directly to the debt collector . . . in connection with the collection of [the] debt, with any person other than the consumer . . . ."

### JURISDICTION AND VENUE

9.    Venue is proper in Hudson County because Defendant regularly conducts business there, including the collection of debts against New Jersey residents residing in Hudson

County.

PARTIES

10.     Plaintiff, Jacqueline M. Maher ("Maher"), is a natural person.

11.     At all times relevant to this lawsuit, Plaintiff was a citizen of the State of New Jersey.

12.     Defendant, United Collection Bureau, Inc. ("Defendant" or "UCB") is a collection agency with an office located at 5620 Southwyck Boulevard, Toledo, Ohio 43614.

13.     Defendants John Does 1 to 10 are natural persons and/or business entities all of whom reside or are located within the United States and personally created, instituted and, with knowledge that such practices were contrary to law, acted consistent with and oversaw policies and procedures used by the employees of Defendant that are the subject of this Complaint. Those defendants personally control the illegal acts, policies, and practices utilized by Defendant and, therefore, are personally liable for all of the wrongdoing alleged in this Complaint. Those fictitious names of individuals and businesses alleged for the purpose of substituting names of defendants whose identity will be disclosed in discovery and should be made parties to this action.

14.     Some or all of John Does 1-10 set the policies and practices complained of herein.

15.     Some or all of John Does 1-10 were actively engaged in the practices complained of herein.

16.     In this pleading, "Defendants" in the plural refers to all Defendants.

FACTUAL ALLEGATIONS

A.     **Allegations Regarding Defendant's Practices Generally**

17.     UCB regularly collects or attempts to collect debts that are past due.

18.     UCB regularly collects or attempts to collect debts allegedly owed to others which

Page **5** of **18**

were incurred primarily for personal, family or household purposes.

19.     UCB is in the business of collecting debts or alleged debts of natural persons which arise from transactions which are primarily for personal, family, or household purposes.

20.     UCB's principal purpose is to collect debts that are (a) owed to others by natural persons, (b) past due, and (c) were incurred by those natural persons primarily for personal, family or household purposes.

21.     Such debts are placed with UCB for the purpose of providing collection services.

22.     The debts which UCB attempted to collect from Plaintiff and each member of the Class were placed with UCB subject to a written agreement governing the scope and nature of UCB's collection services.

23.     When providing its collection services, UCB uses the mails, telephone, the internet and other instruments of interstate commerce in engaging in the business of collecting defaulted debts or alleged debts of natural persons which arise from transactions which are primarily for personal, family, or household purposes.

24.     UCB is a collection agency.

**B.      The Debt**

25.     UCB has asserted that Maher allegedly incurred or owed a certain financial obligation arising out of a personal account.

26.     The debt ("Debt") arose from one or more transactions which were primarily for Maher's personal, family or household purposes.

27.     This account was assigned to UCB for collection.

28.     UCB contends that the account is past due and in default.

29.     The account was allegedly past due and in default at the time it was placed with or assigned to UCB for collection.

30.     In an attempt to collect the Debt, UCB mailed a collection letter to Maher on June 18, 2021 ("6/18/21 Letter") and July 13, 2021 ("7/13/21 Letter").

31.     A true copy of the 6/18/21 Letter and 7/13/21 Letter but with redactions, is attached as **_Exhibit B_**.

32.     UCB caused the UCB Letters[1] to be mailed to Plaintiff in connection with its attempt to collect an alleged past due balance from him.

33.     The UCB Letters included information about a specific Debt which UCB sought to collect.

34.     This Debt was placed with UCB for collection.

35.     UCB contends that the Debt is past due and in default.

36.     At the time the Debt was placed with UCB for collection, the Debt was in default and past due.

37.     Maher received and reviewed the UCB Letters.

**C.     The Disclosure to a Third Party and Publication of List of Debtors**

38.     Maher never consented to Defendant communicating any information regarding the Debt to anyone.

39.     On information and belief, UCB did not draft, print, address, or mail the UCB Letters but, instead, UCB entered into one or more contracts with an unrelated business firm which provides printing, addressing, and mailing services sometimes called a "letter vendor."

40.     On information and belief, UCB's letter vendor is not UCB's corporate parent, subsidiary, under common ownership with UCB, business partner, or joint venturer but is, instead, a third-party letter vendor service provider.

---

[1] The "UCB Letters" refers to the letters attached as Exhibit B.

41.     On information and belief, the contract between UCB and the third-party letter vendor governs the drafting, printing, addressing, and mailing of UCB's collection letters including the UCB Letters. In particular, UCB provides the third-party letter vendor with one or more forms of collection letters and periodically sends data to the third-party letter vendor containing information about each debt to be merged by the third-party letter vendor into individual collection letters which the third-party letter vendor then prints, stuffs into mailing envelopes, and mails.

42.     In connection with the collection of the Debt, UCB conveyed the data concerning the Debt to the third-party letter vendor.

43.     The data which UCB communicated to the third-party letter vendor included: UCB's reference number; the name of the creditor, the last four digits of the creditor's account number; UCB's portal for account information and payment options; the amount due; and Plaintiff's full name and mailing address.

44.     Maher never provided consent to Defendant to communicate to third parties regarding her debt.

45.     By using a letter vendor, Defendant has recklessly disclosed Maher's personal identifying information and private information about her debt to a third party without Maher's prior consent.

46.     Defendant unlawfully disclosed information about Maher's debt including the account number associated with the debt and the alleged balance due.

47.     On information and belief, when UCB conveyed the information about the Debt to the third-party letter vendor, the information was included in a list containing information concerning other debts which, like the Debt, the letter vendor merged with UCB's templates.

48.     The FDCPA prohibits a debt collector from communicating with third parties

"without the prior consent of the consumer given directly to the debt collector . . . in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector ."[2]

49.    The FDCPA also prohibits "[t]he publication of a list of consumers who allegedly refuse to pay debts . . . ."[3]

50.    Unlawfully communicating with a third party letter vendor regarding Plaintiff's Debt violates the FDCPA because it is impermissible communication under sections 1692c(b) and 1692d(3) which has the potential to cause harm to a consumer.

51.    UCB used the same procedures it used in sending the UCB Letters to Plaintiff when sending the same and/or similar letters to numerous other New Jersey consumers.

52.    During the proposed class period, UCB sent letters the same or similar to the UCB Letters to numerous New Jersey consumers in an attempt to collect a debt.

53.    It is UCB's policy and practice to unlawfully communicate and convey private and sensitive information about consumers with third parties by using third party vendors to send written collection communications in attempts to collect consumer debts.

54.    Upon information and belief, UCB published a list of debtors, including Plaintiff, that allegedly refuse to pay debts.

55.    Upon learning her private financial information was published to a third party, Plaintiff experienced stress, anxiety, and embarrassment.

**CLASS ACTION ALLEGATIONS**

56.    Plaintiff brings this action individually and as a class action on behalf of all others

---

[2] 15 U.S.C. § 1692c(b).
[3] 15 U.S.C. § 1692d(3).

similarly situated pursuant to Rule 4:32 of the New Jersey Rules of Court.

57.     Subject to discovery and further investigation which may require Plaintiff to modify the following class definition at the time Plaintiff moves for class certification, Plaintiff seeks certification of a class initially defined as follows:

> **Class**: All natural persons residing in the State of New Jersey whose information was disclosed by Defendant to a third party on or after June 17, 2016, in an attempt to collect a debt originating from Citibank, N.A./Mastercard.
>
>> **FDCPA Subclass**: All natural persons residing in the State of New Jersey, to whom Defendant sent a collection letter; which letter (a) was dated on or after June 17, 2021; (b) was seeking to collect a consumer debt originating from Citibank, N.A./Mastercard; and (c) was sent using a third party letter vendor.

58.     Plaintiff seeks to recover statutory damages, actual damages, and attorney's fees and costs on behalf of herself and all class members under the claims asserted herein.

59.     The Class for whose benefit this action is brought is so numerous that joinder of all members is impracticable.

60.     There are questions of law and fact common to the members of the Class that predominate over questions affecting only individuals.

61.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. A class action will cause an orderly and expeditious administration of the claims of the Class and will foster economies of time, effort and expense by avoiding thousands of individual suits that will be based on the same legal theories that can be resolved in a single proceeding.

62.     Plaintiff's claim is typical of the claims of the members of the Class. She is a member of the Class.

63.     The questions of law and/or fact common to the members of the Class

predominate over any questions affecting only individual members.

64.     Plaintiff does not have interests antagonistic to those of the Class.

65.     The Class, of which Plaintiff is a member, are readily identifiable. The Defendant has records of each account.

66.     Plaintiff will fairly and adequately protect the interests of the Class, and have retained competent counsel experienced in the prosecution of consumer litigation. Proposed Class Counsel have investigated and identified potential claims in the action; have a great deal of experience in handling class actions, other complex litigation, and claims of the type asserted in this action.

67.     The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the Defendant in this action or the prosecution of separate actions by individual members of the class would create the risk that adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.  Prosecution as a class action will eliminate the possibility of repetitious litigation.

68.     Plaintiff does not anticipate any difficulty in the management of this litigation.

**FIRST COUNT**
**DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF FOR THE CLASS**

69.     Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

70.     Defendant's prohibited disclosure of private and sensitive information constitute unfair and unconscionable commercial practices and otherwise violate the Consumer Fraud Act ("CFA") at N.J.S.A. 56:8-2 and the FDCPA at 15 U.S.C. § 1692 *et seq*.

71.     Plaintiff suffered ascertainable loss from Defendant's CFA violations, including

but not limited to reputational harm from Defendant's communication of data to its third-party letter vendor.

72.     Plaintiff therefore has standing to seek injunctive and other equitable relief under the CFA, at N.J.S.A. 56:8-19, and the FDCPA.

73.     Upon information and belief, Defendant continues to pursue collection against Plaintiff, so Plaintiff remains at risk for further prohibited disclosure of private and sensitive information by Defendant to unauthorized third parties.

74.     Moreover, under the Uniform Declaratory Judgments Law at N.J.S.A. 2A:16-53, the Plaintiff and the putative Class members can seek declaratory relief.

75.     The Defendant and its agents or others acting on their behalf should be enjoined from any further action or failing to take actions that result in any invasion of privacy, retain benefits from its illegal acts using protected private and financial information.

**WHEREFORE**, as to Count One, Plaintiff, on behalf of herself and the putative class members, hereby requests a Judgment against Defendant,

a.  Granting class certification for class-wide equitable relief under R. 4:32-1(b)(2), and issuing a declaratory judgment applicable to the Plaintiff and putative Class and Subclass, pursuant to the Uniform Declaratory Judgments Law at N.J.S.A. 2A:16-53, ruling that:

   1.  Defendant violated the CFA.

   2.  Defendant violated the FDCPA.

b.  Granting a permanent injunction against the Defendant, pursuant to the CFA, at N.J.S.A. 56:8-19, and the FDCPA prohibiting them from the disclosure of consumer's information;

c.  Directing the Defendant to provide equitable notice relief pursuant to the CFA and

FDCPA, providing for notice to Class members of the declaratory and injunctive ruling.

d.   Awarding Plaintiff's counsel reasonable attorneys' fees and costs under the CFA;

e.   For such other and further relief as the Court deems equitable and just.

## SECOND COUNT
### DAMAGES UNDER THE CONSUMER FRAUD ACT ON BEHALF OF THE CLASS

76.     Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

77.     Defendant is a "person" within the meaning of the CFA at N.J.S.A. 56:8-1.

78.     Plaintiff and those similarly situated obtained "merchandise" within the meaning of the CFA at N.J.S.A. 56:8-1.

79.     Defendant engaged in unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in connection with the sale of merchandise in violation of the CFA at N.J.S.A. 56:8-2.

80.     Defendant engaged in unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in the subsequent performance of the sale of merchandise in violation of the CFA at N.J.S.A. 56:8-2.

81.     Defendant committed unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in direct violation of the CFA at N.J.S.A. 56:8-2.

82.     As a result of Defendant's unlawful actions, Plaintiff and the Class members suffered ascertainable loss from Defendant's CFA violations, entitling them to treble damages under the CFA, at N.J.S.A. 56:8-19.

**WHEREFORE**, as to Count Two, Plaintiff, on behalf of herself and the putative Class members, hereby requests a Judgment against Defendant,

a.   Granting class certification of the Subclass under R. 4:32-1(b)(3);

b.   Awarding treble damages under the CFA, at N.J.S.A. 56:8-19;

c.   Awarding Plaintiff's counsel reasonable attorneys' fees and costs under the CFA, at N.J.S.A. 56:8-19;

d.   For pre-judgment and post-judgment interest; and

e.   For such other and further relief as the Court deems equitable and just.

### THIRD COUNT
### NEGLIGENCE ON BEHALF OF THE CLASS

83.   Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

84.   Defendant owed the Plaintiff a duty to maintain the confidentiality of her private and financial information.

85.   Defendant, as a debt collector, was not allowed to publish said private financial information in accordance with the Fair Debt Collection Practices Act.

86.   Accordingly, the FDCPA establishes a certain standard of conduct for debt collectors when handling a debtor's confidential information.

87.   Expert testimony is not required to establish that the disclosure of confidential and protected information breaches a commonly known duty owed by Defendant.

88.   The disclosure of the confidential and protected information of the Plaintiff and the Class damaged them by exposing their private information to persons who lacked any right or entitlement to know their private information.

89.   The Plaintiff and others have suffered a compensable loss arising from the disclosure of their protected private and financial information.

90.   The Class has likewise suffered a compensable loss arising from the disclosure of their protected private and financial information.

**WHEREFORE**, as to Count Three, Plaintiff, on behalf of herself and the putative Class members, hereby requests a Judgment against Defendant,

a. Granting class certification of the Class under R. 4:32-1(b)(3);

b. A money judgment for compensatory damages based on the Defendant's disclosure of the Plaintiff and Class's private information;

c. For attorney's fees, litigation expenses and costs in connection with this action;

d. For pre-judgment and post-judgment interest; and

e. For such other and further relief as the Court deems equitable and just.

### FOURTH COUNT
### INVASION OF PRIVACY ON BEHALF OF THE CLASS

91.    Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

92.    Defendant invaded the privacy of Plaintiff by unreasonable publication of private facts.

93.    These private facts, Plaintiff's financial information, are actually private matters, the dissemination of such facts would be offensive to a reasonable person and there is no legitimate interest of the public in being apprised of the facts publicized.

94.    Defendant was prohibited by 15 U.S.C. § 1692c(b) and 1692d(3) from publishing said financial information to third parties.

95.    Plaintiff had a reasonable expectation that said financial information would not be shared except in compliance with the law.

96.    The Plaintiff and others have found the disclosure of financial information to third parties in violation of the law to be highly offensive.

97.    Expert testimony is not required to establish that the disclosure of confidential financial information invaded a person's privacy.

98.     By publishing the private financial information of the Plaintiff and the Class, Defendant damaged them by exposing their private information to persons who lacked any right or entitlement to know their private financial information.

99.     The Plaintiff and others have suffered a compensable loss arising from the invasion of their privacy.

100.     The Class has likewise suffered a compensable loss arising from the invasion of their privacy.

**WHEREFORE**, as to Count Four, Plaintiff, on behalf of herself and the putative Class members, hereby requests a Judgment against Defendant,

a.   Granting class certification of the Class under R. 4:32-1(b)(3);

b.   A money judgment for compensatory damages based on the Defendant's invasion of the privacy of the Plaintiff and Class;

c.   For attorney's fees, litigation expenses and costs in connection with this action;

d.   For pre-judgment and post-judgment interest; and

e.   For such other and further relief as the Court deems equitable and just.

### FIFTH COUNT
### FAIR DEBT COLLECTION PRACTICES ACT FOR THE FDCPA SUBCLASS

101.     Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

102.     Defendant is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

103.     The Debt is "debt" within the meaning of 15 U.S.C. §1692a(5).

104.     Plaintiff is a "consumer" within the meaning of 15 U.S.C. § 1692a(3).

105.     The UCB Letters are "communication[s]" as defined by 15 U.S.C. § 1692a(2).

106.     Defendant sent the UCB Letters in an attempt to collect "debt" within the meaning of 15 U.S.C. §1692a(5).

107.    Defendant violated the FDCPA including sections 1692c, 1692c(b), 1692d, 1692d(3), and 1692f of the FDCPA.

108.    Based on any one of those violations, Defendant is liable to Plaintiff and the Class for statutory damages, attorney's fees and costs under 15 U.S.C. § 1692k.

**WHEREFORE**, as to Count Five, Plaintiff, on behalf of herself and the putative Class members, hereby requests a Judgment against Defendant, United Collection Bureau, Inc.,

a.    An order certifying that the Cause of Action may be maintained as a class pursuant to R. 4:32 including defining the class, defining the class claims, and appointing Plaintiff as the class representative and the undersigned attorney and The Law Office of Ronald I. LeVine, Esq. as class counsel;

b.    An award of statutory damages for Plaintiff pursuant to 15 U.S.C. § 1692k(a)(2)(A) and § 1692k(a)(2)(B)(i);

c.    An award of statutory damages for the Class pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii);

d.    Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(B)(3); and

e.    For pre-judgment and post-judgment interest; and

f.    For such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues subject to trial by jury.

## NOTICE TO ATTORNEY GENERAL

A copy of this Complaint will be mailed to the Attorney General of the State of New Jersey within ten days after the filing with the Court, pursuant to N.J.S.A. 56:8-20.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Yongmoon Kim is designated as trial counsel for Plaintiff.

## CERTIFICATION

Pursuant to Rule 4:5-1, I hereby certify to the best of my knowledge that the matter in

controversy is not the subject of any action pending in any court or the subject of a pending

arbitration proceeding, nor is any other action or arbitration proceeding contemplated, except the

case styled *Zamora v. United Collection Bureau, Inc., et al.*, Case Number: 2:21-cv-14437-

MCA-JSA, currently pending in the District Court for the District of New Jersey and *Mohamad*

*v. United Collection Bureau, Inc., et al.*, Docket Number: ESX-L-6130-21.

   I further certify that I know of no party who should be joined in this action at this time.

   I hereby certify that pursuant to Rule 1:38-7: All confidential identifiers of the parties to

this action have been redacted from all documents or pleadings submitted to the Court.

Dated: June 17, 2022         KIM LAW FIRM LLC

                 */s/ Yongmoon Kim*
                 Yongmoon Kim, Esq.

                 *Attorneys for Plaintiff*

NCLC §1.1 Introduction

DIGITAL
LIBRARY
Published on NCLC Digital Library (https://library.nclc.org)
Date downloaded: April 26, 2021 6:52 pm

The Fair Credit Reporting Act (FCRA) protects a limited segment of financial privacy, by regulating consumer reporting agencies (CRAs) that collect credit information about consumers, those who provide information to the CRAs, and those who seek information from CRAs. However, many consumer financial transactions do not fall within the FCRA, and other sources of privacy law must be examined to see if they can protect personal financial data from those who seek to acquire and exploit it. Discussed below are some federal statutes, state statutes, common law tort claims, and identity theft laws that may serve to shield consumers' economic conduct.

As the world has gone digital, consumers' records, both financial and otherwise, are increasingly vulnerable to exposure. Transactions that were once fleeting, recorded only on paper and filed in some cabinet, or perhaps reduced to microfiche, are now but mouse-clicks away from duplication and dissemination.

Unregulated databases, escalating numbers of mergers, and the proliferation of information brokers—private investigators who specialize in obtaining computerized records—all threaten privacy. As was noted in Congress, "databases of personal identifiable information are increasingly prime targets of hackers, identity thieves, rogue employees, and other criminals, including organized and sophisticated criminal operations."[1]

The internet raises particular privacy concerns, as information sent over the World Wide Web may pass through dozens of different computer systems, each of which can snatch and hold the information in its coffers. In addition, website owners can track consumers' online behavior and gather information about their preferences, often without their knowledge. Web bugs, or tiny graphics that are put into web pages and e-mails, can monitor who views the information. Clickstream data can tell website owners which pages of the site were viewed and for how long. "Cookies" dropped onto a computer may not identify the user by name but do identify the particular computer, which allows an interested party to assemble a great deal of information about that computer's user.[2]

Financial information is especially sensitive, able to reveal not just a consumer's standard of living and debt load, but also personal preferences and lifestyle details ranging from books bought to prescriptions purchased. In *California Bankers Ass'n v. Shultz*,[3] Justice Powell pointed out that "[f]inancial transactions can reveal much about a person's activities, associations, and beliefs." Justice Douglas elaborated further:

> A checking account . . . [m]ay well record a citizen's activities, opinion, and beliefs as fully as transcripts of his telephone conversations . . . In a sense a person is defined by the checks he writes. By examining them the agents get to know his doctors, lawyers, creditors, political allies, social connections, religious affiliation, educational interests, the papers and magazines he reads, and so on ad infinitum.[4]

The same can be said of credit card charges, debit purchases, and online transactions. Forty years later, the details of these revealing consumer activities are easily collected, compiled, analyzed, and accessed, and thus have created a lucrative market for their trade. One industry leader among data aggregation companies, Acxiom, advertises that it has data on 2.5 billion consumers.[5] Acxiom claims that one of its products covering American consumers has data on 250 million consumers, offering data not just on individual demographics, but also household characteristics, financial information, life events, major purchases, and behavior, all of which allows for targeted marketing.[6] Experian reports that it manages data on more than 300 million consumers and 126 million households,[7] while Equifax claims a database of over 115 million U.S. households distributed over 150 different segment groups, which can be used to predict behavior.[8] In 2017, Equifax suffered a data breach that involved the personal data on nearly half the United States population being stolen, a breach that a Congressional committee found to have been "entirely preventable."[9] In 2014, the Federal Trade Commission filed a complaint against another data broker that allegedly bought the payday loan applications of consumers and then sold the information to marketers with no legitimate need for it, leading some scammers among them to debit millions from the consumers' accounts.[10]

Marketers are intensely interested in consumers' online and other behavior so they can pinpoint consumers for advertising.[11] Businesses want to learn as much about consumers as possible.[12] Furthermore, since the 9/11 attacks, the federal government, specifically the National Security Agency, has voraciously sought data about individuals both inside and outside the United States.[13] Political groups seek out and aggregate information about consumers to assign them "persuasion scores" that purport to measure how likely that consumer is to vote for or against a particular candidate.[14] Even the mundane task of grocery shopping is considered sufficiently informative that supermarkets use "loyalty cards" to track every item purchased by every cardholder, and they are free to sell that information to anyone who might be interested. There is a near insatiable hunger to

© Copyright, National Consumer Law Center, Inc., All rights reserved. Terms of use.
National Consumer Law Center and NCLC are trademarks of National Consumer Law Center, Inc.

[EXHIBIT A]

§ 1.2.1 Introduction

Published on NCLC Digital Library (https://library.nclc.org)
Date downloaded: April 26, 2021 6:52 pm

learn how consumers get and spend their money.

Notwithstanding the sensitivity embedded in a person's financial choices, they are, for the most part, fair game for trade. While federal law protects against disclosure of video rental preferences,[15] cable viewing preferences,[16] medical records,[17] and student records,[18] it does not yet prevent financial or other institutions from selling their customers' Social Security numbers, account balances, maturity dates, securities holdings, or other information to private entities.[19] Consequently, consumers remain largely ignorant of the trafficking in such personal information.

In 2014, the FTC conducted an in-depth study of nine data brokers that collect personal information about consumers and then sell it for marketing and other purposes, and issued an extensive and often critical report.[20] In addition to describing the processes by which data brokers gather and use consumer information, the agency called for Congress to "consider enacting legislation that would enable consumers to learn of the existence and activities of data brokers and provide consumers with reasonable access to information about them held by these entities."[21] In effect, this is a call for Congress to extend some of the basic rights provided by the FCRA to data that falls outside that act. However, there could be downsides to such legislation to regulate data brokers, such as preemption of stronger state laws and potential impairment of the FCRA if brokers are covered under both that Act and the proposed law.

Though the FCRA limits some disclosures by private parties of consumer financial information, it does not give consumers the right to prohibit a CRA from disclosing accurate, nonobsolete information to those deemed to have a permissible purpose.[22] Furthermore, while some data warehousers fall within the definition of a CRA,[23] others that sell their records for reasons other than those included in the definition of a CRA may evade the FCRA's restrictions.[24]

In addition, the Gramm-Leach-Bliley Act (the GLBA) gives consumers a limited right to "opt out" of certain disclosures by financial institutions to nonaffiliated third parties.[25] However, its abundant exceptions arguably all but destroy the protection it purports to provide.

American privacy law is poorly suited to protecting privacy, especially of computerized consumer information. Aside from the FCRA, privacy laws largely fall into three categories: laws protecting personal privacy from invasions by governments, federal or local; the common law tort of invasion of privacy; and statutes and case law that prohibit private parties from obtaining[26] or disclosing[27] specific types of information. Relevant provisions of the GLBA[28] will be described in this last category;[29] they impose certain notice requirements on financial institutions who disclose financial data and a limited right for consumers to opt out of some kinds of disclosures.

## Footnotes

1 {1} Personal Data Privacy and Security Act of 2005, S. 1332, 109th Cong. (June 29, 2005).

2 {2} *See* www.epic.org/privacy/internet/cookies [1].

3 {3} 416 U.S. 21 (1974).

4 {4} *Id*. at 85, 90 (Douglas, J., dissenting).

5 Acxiom Data: Unparalleled Global Consumer Insights [2] 2, *available at* https://www.acxiom.com.

6 Acxiom Data: Unparalleled Global Consumer Insights [2] 3–4, *available at* https://www.acxiom.com.

7 {7} Experian, Experian Marketing Services: Consumer View [3], *available at* https://www.experian.com.

© Copyright, National Consumer Law Center, Inc. All rights reserved. Terms of use.
National Consumer Law Center® and NCLC® are trademarks of National Consumer Law Center, Inc.

[EXHIBIT A]

NCLC
DIGITAL
LIBRARY

HUD-L-001993-22   06/17/2022 5:18:32 PM   Pg 3 of 5   Trans ID: LCV20222294124
Case 2:22-cv-04669-CCC-JRA   Document 1   Filed 07/21/22   Page 30 of 36 PageID: 30
I&1 Introduction
Published on NCLC Digital Library (https://library.nclc.org)
Date downloaded: April 26, 2021 6:52 pm

8 {8} Equifax, Compiled Data [4], *available at* www.equifax.com. In 2017, Equifax had credit information on 820 million consumers. U.S. House of Representatives, Committee on Oversight and Government Reform Majority Staff Report, The Equifax Data Breach [5] 15 (Dec. 2018), *available at* https://republicans-oversight.house.gov.

9 U.S. House of Representatives, Committee on Oversight and Government Reform Majority Staff Report, The Equifax Data Breach [5] 2 (Dec. 2018), *available at* https://republicans-oversight.house.gov.

10 {10} Fed. Trade Comm'n, FTC Charges Data Broker with Facilitating the Theft of Millions of Dollars from Consumers' Accounts (Dec. 23, 2014) [6], *available at* www.ftc.gov.

11 {11} *See* Frank Pasquale, *The Dark Market for Personal Data*, N.Y. Times, Oct. 16, 2014.

12 {12} *See, e.g.,* Stephanie Clifford and Quentin Hardy, *Attention, Shoppers: Store Is Tracking Your Cell*, N.Y. Times, July 14, 2013; Your Privacy for Sale, Consumer Rep. (Oct. 2006).

13 {13} *See* James Risen and Laura Poitras, N.S.A. Gathers Data on Social Connections of U.S. Citizens, N.Y. Times, Sept. 28, 2013 [7], *available at* www.nytimes.com (describing the practices of NSA in analyzing phone call and e-mail logs, along with material from "public, commercial and other sources, including bank codes, insurance information, Facebook profiles, passenger manifests, voter registration rolls and GPS location information," for both foreigners and Americans alike).

14 {14} For instance, in the 2016 election the data analytics company Cambridge Analytica claimed to have developed "psychographic" profiles on potential voters that the Trump campaign could exploit to grow its voter base. *See* Nicholas Confessore and Danny Hakim, *Data Firm Says "Secret Sauce" Aided Trump; Many Scoff*, N.Y. Times, Mar. 6, 2017, at A1. *See also* Jim Rutenberg, *Data You Can Believe In: The Obama Campaign's Digital Masterminds Cash In,* N.Y. Times Magazine, June 20, 2013. One data-mining company that specializes in voter information, Aristotle, Inc., advertises that it maintains a "massive and ever-expanding database [that] includes over 190 million U.S. voters" and that it can "microtarget[]" individuals based on their "interests and hobbies," along with "political district, political party affiliation, super-voters, gender, ethnicity, marital status, wealth, educational level and presence of children." http://aristotle.com/political-data [8].

15 {15} Video Privacy Protection Act of 1988, 18 U.S.C. § 2710.

Several states have similar acts, some of which extend beyond prohibiting merely the disclosure of video rental records to the disclosure of the purchase or rental of *any* written materials. *See, e.g.,* Mich. Comp. Laws § 445.1712 (known as both Michigan's Preservation of Privacy Act and the Video Rental Privacy Act) (prohibiting, with exceptions anyone who is "engaged in the business of selling at retail . . . written materials" from disclosing information about the transaction in a way that "indicates the identity of the customer"). *See also* Coulter-Owens v. Rodale, Inc., 2015 WL 575004, at *4 (E.D. Mich. Feb. 11, 2015) (denying dismissal of claim under state video rental privacy act arising from the alleged sale by the defendant, a magazine publisher, of subscribers' information to data-mining companies). The Sixth Circuit recently limited the reach of Michigan's act by concluding that a magazine publisher that used independent third parties to sell subscriptions could not be liable to a customer who had bought a subscription to its publication because the publisher was therefore not "in the business of selling at retail." Coulter-Owens v. Time Inc., 695 Fed. Appx. 117, 123–124 (6th Cir. 2017).

16 {16} Cable Communications Policy Act of 1984, 47 U.S.C. § 551(c). Note that the USA PATRIOT Act expanded the list of disclosures permitted by the Cable Communications Policy Act by adding certain disclosures made to specified government authorities. Pub. L. No. 107-56, § 211 (Oct. 26, 2001), *amending* 47 U.S.C. § 551(c).

**[EXHIBIT A]**

© Copyright, National Consumer Law Center, Inc., All rights reserved, Terms of use.
National Consumer Law Center® and NCLC® are trademarks of National Consumer Law Center, Inc.

Published on NCLC Digital Library (https://library.nclc.org)
Date downloaded: April 26, 2021 6:52 pm

17 {17} Most health insurers and providers must comply with the Privacy Rule promulgated pursuant to the Health Insurance Portability and Accountability Act (HIPAA). 45 C.F.R. §§ 160.101 to 160.312, §§ 164.102 to 164.534. The HIPAA Privacy Rule generally prohibits covered entities from using or disclosing protected health information except as specifically allowed. Among the permitted disclosures are those to CRAs for purposes of payment, so long as the disclosure is limited to the following information: name and address, date of birth, Social Security number, payment history, account number, and name and address of the health care provider. 45 C.F.R. §§ 164.501, 164.506(c)(1). In 2009, Congress expanded the categories of those subject to HIPAA's anti-disclosure requirements in the Health Information Technology for Economic and Clinical Health Act (the HITECH Act). Pub. L. No. 111-5, 123 Stat. 115 (Feb. 7, 2009) (codified in scattered sections of titles 26 and 42 of the United States Code). *See also* 45 C.F.R. § 160.103 (containing an expanded definition of the "business associates" who are subject to the anti-disclosure provisions). For a discussion of the HIPAA Privacy Rule, see National Consumer Law Center, Collection Actions § 9.3.4 [9] (4th ed. 2017), *updated at* www.nclc.org/library. See § 5.4 [10], *supra*, for a discussion of the FCRA's restrictions on medical information.

18 {18} Family Educational Rights & Privacy Act of 1974, 20 U.S.C. § 1232g.

19 {19} Federal law prohibits firms and persons who regularly prepare income tax returns for others from disclosing personal tax information or using it for other purposes, with a few exceptions. 26 U.S.C. § 7216. The Privacy Act of 1974, 5 U.S.C. § 552a, requires all government agencies, whether federal, state, or local, that request Social Security numbers to provide a disclosure statement that explains whether the consumer is required to provide the number, how it will be used, and under what statutory authority the agency is requesting the number. The Act provides that a consumer cannot be denied a benefit for refusing to provide the number unless the number is required by federal law (or the disclosure is to an agency that had been using Social Security numbers prior to enactment of the Privacy Act). Although usually a consumer is not compelled to disclose her Social Security number to a private business, no federal law prohibits them from asking for it or from refusing to do business with a consumer who refuses to provide it.

20 {20} Fed. Trade Comm'n, Data Brokers: A Call for Transparency and Accountability, at i (May 2014) [11], *available at* www.ftc.gov.

21 {21} *Id.* at vii. The FTC noted these specific concerns: "Data brokers acquire a vast array of detailed and specific information about consumers; analyze it to make inferences about consumers, some of which may be considered sensitive; and share the information with clients in a range of industries. *All of this activity takes place behind the scenes, without consumers' knowledge.*" *Id.* (emphasis added).

22 {22} The Act additionally imposes some restrictions on users of consumer reports and imposes obligations on those that furnish information to CRAs to provide accurate information. *See* Chs. 6 [12] and 7 [13], *supra*. Some state laws give consumers the right to deny access to, or to "freeze," their consumer reports. *See* § 9.4.1 [14], *supra*, and Appx. H [15], *infra*.

23 {23} *See* § 2.7.5 [16], *supra*.

24 {24} U.S. Gov't Accountability Office, GAO-06-674, Report to the Committee on Banking, Housing and Urban Affairs, U.S. Senate: Personal Information: Key Federal Privacy Laws Do Not Require Information Resellers to Safeguard All Sensitive Data (June 2006). *See generally* Ch. 2 [17], *supra* (discussing what constitutes a "consumer report" and "consumer reporting agency").

25 {25} *See* § 18.4.1 [18], *infra*.

26 {26} For example, through wiretapping. *See, e.g.*, 18 U.S.C. § 2510; Cal. Penal Code §§ 631 to 637; Conn. Gen. Stat. Ann. §§ 53a-187 to 53a-189; N.J. Rev. Stat. § 2A:156A-1.

[EXHIBIT A]

© Copyright, National Consumer Law Center, Inc., All rights reserved. Terms of use
National Consumer Law Center® and NCLC® are trademarks of National Consumer Law Center, Inc.

HUD-L-001993-22   06/17/2022 5:18:32 PM   Pg 5 of 5   Trans ID: LCV20222294124
Case 2:22-cv-04669-CCC-JRA    Document 1    Filed 07/21/22    Page 32 of 36 PageID: 32

27 {27} For example, the disclosure of customers' video recording rentals. *See, e.g.*, Cal. Civ. Code § 1799.3 (West); Conn. Gen. Stat. Ann. § 53-450; Iowa Code Ann. § 727.11.

28 {28} 15 U.S.C. §§ 6801 to 6810.

29 {29} *See* § 18.4.1 [18], *infra*.

**Source:** National Consumer Law Center, Fair Credit Reporting [9th ed.], updated at www.nclc.org/library
**Source URL:** https://library.nclc.org/fcr/1801-0

**Links**
[1] http://www.epic.org/privacy/internet/cookies
[2] https://www.acxiom.com/wp-content/uploads/2019/02/Acxiom_Data_Overview_2019_02.pdf
[3] https://www.experian.com/marketing-services/targeting/data-driven-marketing
[4] http://www.equifax.com/compiled-data/
[5] https://republicans-oversight.house.gov/wp-content/uploads/2018/12/Equifax-Report.pdf
[6] https://www.ftc.gov/news-events/press-releases/2014/12/ftc-charges-data-broker-facilitating-theft-millions-dollars
[7] http://www.nytimes.com/2013/09/29/us/nsa-examines-social-networks-of-us-citizens.html?_r=0
[8] http://aristotle.com/political-data
[9] https://library.nclc.org/nclc/link/CA.09.03.04
[10] https://library.nclc.org/nclc/link/FCR.05.04
[11] https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf?utm_source=govdelivery
[12] https://library.nclc.org/nclc/link/FCR.06
[13] https://library.nclc.org/nclc/link/FCR.07
[14] https://library.nclc.org/nclc/link/FCR.09.04.01
[15] https://library.nclc.org/nclc/link/FCR.AH
[16] https://library.nclc.org/nclc/link/FCR.02.07.05
[17] https://library.nclc.org/nclc/link/FCR.02
[18] https://library.nclc.org/nclc/link/FCR.18.04.01

**[EXHIBIT A]**

© Copyright, National Consumer Law Center, Inc., All rights reserved, Terms of use
National Consumer Law Center and NCLC are trademarks of National Consumer Law Center, Inc.

TOLEDO OH 43614

JACQUELINE MAHER
REDACTED
REDACTED

Creditor:                                              REDACTED
Regarding:                                             REDACTED
Last Four Digits of Creditor Account Number:    REDACT
United Collection Bureau, Inc. Reference Number:   REDACTED
Account Balance:                                   REDACTED

Dear JACQUELINE MAHER:

This communication is in regard to your REDACTED      account.

Unless you dispute the validity of this debt or any portion thereof, please make your payment to REDACTED at the remit address below or call our office for arrangements.

You may call our office toll free at 1-800-935-1798, or if you require Telecommunication Relay Service (TRS), please dial 711. Please refer to reference number REDACTED .

 Pay online: CONSUMERVIEW.UCBINC.COM      Speak with a representative: 1-800-935-1798

Sincerely,
United Collection Bureau, Inc.

This is an attempt to collect a debt by United Collection Bureau, Inc., a debt collector, and any information obtained will be used for that purpose.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

SEE REVERSE SIDE FOR IMPORTANT INFORMATION

24CU027000CDN

PLEASE RETURN THIS PORTION WITH PAYMENT. DO NOT ATTACH CHECK TO STUB
PLEASE MAKE YOUR PAYMENT PAYABLE TO REDACTED

PO BOX 140310
TOLEDO OH 43614

ADDRESS SERVICE REQUESTED

Creditor:                                              REDACTED
Regarding:                                             REDACTED
Last Four Digits of Creditor Acct. Number:       REDAC
Account Balance:                                     REDACTED
United Collection Bureau, Inc. Reference No:      REDACTED
United Collection Bureau, Inc. Telephone No:      1-800-935-1798

REMIT TO:

June 18, 2021

United Collection Bureau, Inc.
PO BOX 140310
TOLEDO OH 43614

REDACTE

JACQUELINE MAHER
REDACTED
REDACTED



[EXHIBIT B]

fund transfer from your account or to process the payment or check transaction.

If you have a concern about the way we are collecting this debt, please email us at UCBCompliance@ucbinc.com or please call our toll-free Consumer Service Hotline at 1-866-209-0622.

We are required under state and city law to notify consumers of the following rights. This list does not include all rights consumers have under state, city, and federal law.

**THE STATE OF CALIFORNIA REQUIRES THAT WE FURNISH RESIDENTS OF CALIFORNIA WITH THE FOLLOWING INFORMATION:** The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov. Nonprofit credit counseling services may be available in the area. For the purposes of collecting this debt, we may collect personal information about you including your name, social security number, employment information, information concerning your financial ability to pay this debt, bank and credit card account information, your location and other contact information including your telephone number and email address, and any information you provide through our website including your ip address. A copy of our privacy policy may be found at www.ucbinc.com.

**THE STATE OF COLORADO REQUIRES THAT WE FURNISH RESIDENTS OF COLORADO WITH THE FOLLOWING INFORMATION:** FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE HTTPS://COAG.GOV/OFFICE-SECTIONS/CONSUMER-PROTECTION/CONSUMER-CREDIT-UNIT/COLLECTION-AGENCY-REGULATION/. A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt. Payments can be made in person at: Colorado Manager, Inc., 8690 Wolff Court, Suite 110, Westminster, Colorado 80031, 303-920-4763.

**THE STATE OF IDAHO REQUIRES THAT WE FURNISH RESIDENTS OF IDAHO WITH THE FOLLOWING INFORMATION:** Toll Free 1-866-209-0622 during normal business hours.

**THE STATE OF KANSAS REQUIRES THAT WE FURNISH RESIDENTS OF KANSAS WITH THE FOLLOWING INFORMATION:** An investigative consumer report, which includes information as to your character, general reputation, personal characteristics and mode of living, may have been requested. You have the right to request additional information, which includes the nature and scope of the investigation.

**THE STATE OF MAINE REQUIRES THAT WE FURNISH RESIDENTS OF MAINE WITH THE FOLLOWING INFORMATION:** Hours of operation (ET): Monday through Thursday, 8:00 a.m. to 8:00 p.m.; Friday, 8:00 a.m. to 5:00 p.m.

**THE STATE OF MASSACHUSETTS REQUIRES THAT WE FURNISH RESIDENTS OF MASSACHUSETTS WITH THE FOLLOWING INFORMATION:** You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten days unless you provide written confirmation of the request postmarked or delivered within seven days of such request. You may terminate this request by writing to the debt collector. Hours of operation (ET): Monday through Thursday, 8:00 a.m. to 8:00 p.m.; Friday, 8:00 a.m. to 5:00 p.m.

**THE STATE OF MINNESOTA REQUIRES THAT WE FURNISH RESIDENTS OF MINNESOTA WITH THE FOLLOWING INFORMATION:** This collection agency is licensed by the Minnesota Department of Commerce.

**THE CITY OF NEW YORK REQUIRES THAT WE FURNISH RESIDENTS OF NEW YORK CITY WITH THE FOLLOWING INFORMATION:** New York City Department of Consumer Affairs License Number 1004887. This collection agency conducts business primarily in English. However, we may employ foreign language speakers from time to time and may accommodate verbal communication in a foreign language when appropriate staff is available. Some, but not all, standard written communications produced by us may be available in Spanish. A translation and description of commonly-used debt collection terms is available in multiple languages on the New York City Department of Consumer Affair's website, www.nyc.gov/dca.

**THE STATE OF NORTH CAROLINA REQUIRES THAT WE FURNISH RESIDENTS OF NORTH CAROLINA WITH THE FOLLOWING INFORMATION:** North Carolina Permit Numbers: 101866, 113029, 3843, 113517, and 4367.

**THE STATE OF TENNESSEE REQUIRES THAT WE FURNISH RESIDENTS OF TENNESSEE WITH THE FOLLOWING INFORMATION:** This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance.

**THE STATE OF WISCONSIN REQUIRES THAT WE FURNISH RESIDENTS OF WISCONSIN WITH THE FOLLOWING INFORMATION:** This collection agency is licensed by the Division of Banking in the Wisconsin Department of Financial Institutions, www.wdfi.org.

UCBV21 09.10.20



# [EXHIBIT B]

5620 SOUTHWYCK BLVD SUITE 206
TOLEDO OH 43614

JACQUELINE MAHER
REDACTED
REDACTED

Creditor:                                          REDACTED
Regarding:                                         REDACTED
Last Four Digits of Creditor Account Number:       REDACT
United Collection Bureau, Inc. Reference Number:   REDACTED
Account Balance:                                   REDACTED

Dear JACQUELINE MAHER:

This communication is in regard to your REDACTED          account.

On behalf of REDACTED        United Collection Bureau, Inc. will accept a settlement in the amount of REDACTED for the above referenced account. To take advantage of this offer please ensure the total payment is received in our office by July 28, 2021. We are not obligated to renew this offer and this agreement is contingent upon clearance of funds.

If you wish to accept this offer, please contact our office to establish a payment method and date, or mail a copy of this letter together with your payment to the remit address below. Please make your check or money order payable to REDACTED. You may call our office toll free at 1-800-935-1798, or if you require Telecommunication Relay Service (TRS), please dial 711. Please refer to reference number REDACTED.

In the event you are unable to accept this offer, we encourage you to contact our office to establish a payment arrangement toward the full balance of the account.

 Pay online: CONSUMERVIEW.UCBINC.COM         Speak with a representative: 1-800-935-1798

Thank you for your prompt attention to this matter.

Sincerely,
United Collection Bureau, Inc.

This is an attempt to collect a debt by United Collection Bureau, Inc., a debt collector, and any information obtained will be used for that purpose.

**SEE REVERSE SIDE FOR IMPORTANT INFORMATION**

24CU027000CStF

PLEASE RETURN THIS PORTION WITH PAYMENT DO NOT ATTACH CHECK TO STUB
PLEASE MAKE YOUR PAYMENT PAYABLE TO REDACTED

PO BOX 140310
TOLEDO OH 43614

ADDRESS SERVICE REQUESTED

Creditor:                                          REDACTED
Regarding:                                         REDACTED
Last Four Digits of Creditor Acct. Number:                    REDAC
Account Balance:                                   REDACTED
United Collection Bureau, Inc. Reference No:       REDACTED
United Collection Bureau, Inc. Telephone No:       1-800-935-1798

━━━━━ REMIT TO: ━━━━━

July 13, 2021

REDACTE

UNITED COLLECTION BUREAU, INC.
PO BOX 140310
TOLEDO OH 43614

008504

JACQUELINE MAHER
REDACTED
REDACTED

1 of 1

70115509



[EXHIBIT B]

transfer from your account or to process the payment as a check transaction.

If you have a concern about the way we are collecting this debt, please email us at UCBCompliance@ucbinc.com or please call our toll-free Consumer Service Hotline at 1-866-209-0622.

We are required under state and city law to notify consumers of the following rights. This list does not include all rights consumers have under state, city, and federal law.

**THE STATE OF CALIFORNIA REQUIRES THAT WE FURNISH RESIDENTS OF CALIFORNIA WITH THE FOLLOWING INFORMATION:** The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov. Nonprofit credit counseling services may be available in the area. For the purposes of collecting this debt, we may collect personal information about you including your name, social security number, employment information, information concerning your financial ability to pay this debt, bank and credit card account information, your location and other contact information including your telephone number and email address, and any information you provide through our website including your ip address. A copy of our privacy policy may be found at www.ucbinc.com.

**THE STATE OF COLORADO REQUIRES THAT WE FURNISH RESIDENTS OF COLORADO WITH THE FOLLOWING INFORMATION:** FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE HTTPS://COAG.GOV/OFFICE-SECTIONS/CONSUMER-PROTECTION/CONSUMER- CREDIT-UNIT/COLLECTION-AGENCY-REGULATION/. A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt. Payments can be made in person at: Colorado Manager, Inc., 8690 Wolff Court, Suite 110, Westminster, Colorado 80031, 303-920-4763.

**THE STATE OF IDAHO REQUIRES THAT WE FURNISH RESIDENTS OF IDAHO WITH THE FOLLOWING INFORMATION:** Toll Free 1-866-209-0622 during normal business hours.

**THE STATE OF KANSAS REQUIRES THAT WE FURNISH RESIDENTS OF KANSAS WITH THE FOLLOWING INFORMATION:** An investigative consumer report, which includes information as to your character, general reputation, personal characteristics and mode of living, may have been requested. You have the right to request additional information, which includes the nature and scope of the investigation.

**THE STATE OF MAINE REQUIRES THAT WE FURNISH RESIDENTS OF MAINE WITH THE FOLLOWING INFORMATION:** Hours of operation (ET): Monday through Thursday, 8:00 a.m. to 8:00 p.m.; Friday, 8:00 a.m. to 5:00 p.m.

**THE STATE OF MASSACHUSETTS REQUIRES THAT WE FURNISH RESIDENTS OF MASSACHUSETTS WITH THE FOLLOWING INFORMATION:** You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten days unless you provide written confirmation of the request postmarked or delivered within seven days of such request. You may terminate this request by writing to the debt collector.  Hours of operation (ET): Monday through Thursday, 8:00 a.m. to 8:00 p.m.; Friday, 8:00 a.m. to 5:00 p.m.

**THE STATE OF MINNESOTA REQUIRES THAT WE FURNISH RESIDENTS OF MINNESOTA WITH THE FOLLOWING INFORMATION:** This collection agency is licensed by the Minnesota Department of Commerce.

**THE CITY OF NEW YORK REQUIRES THAT WE FURNISH RESIDENTS OF NEW YORK CITY WITH THE FOLLOWING INFORMATION:** New York City Department of Consumer Affairs License Number 1004887. This collection agency conducts business primarily in English. However, we may employ foreign language speakers from time to time and may accommodate verbal communication in a foreign language when appropriate staff is available. Some, but not all, standard written communications produced by us may be available in Spanish.  A translation and description of commonly-used debt collection terms is available in multiple languages on the New York City Department of Consumer Affair's website, www.nyc.gov/dca.

**THE STATE OF NORTH CAROLINA REQUIRES THAT WE FURNISH RESIDENTS OF NORTH CAROLINA WITH THE FOLLOWING INFORMATION:** North Carolina Permit Numbers: 101866, 113029, 3843, 113517, and 4367.

**THE STATE OF TENNESSEE REQUIRES THAT WE FURNISH RESIDENTS OF TENNESSEE WITH THE FOLLOWING INFORMATION:** This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance.

**THE STATE OF WISCONSIN REQUIRES THAT WE FURNISH RESIDENTS OF WISCONSIN WITH THE FOLLOWING INFORMATION:** This collection agency is licensed by the Division of Banking in the Wisconsin Department of Financial Institutions, www.wdfi.org.

UCBV21 09.10.20

# [EXHIBIT B]